UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:10-CR-00072-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| PATRICK JEROME BOYD, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's *pro se* Motion for Compassionate Release, brought pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. No. 114. Defendant seeks release based on the COVID-19 pandemic, asserting his medical conditions place him at an increased health risk from the virus while incarcerated. As explained below, the motion is denied.

I. BACKGROUND

On April 20, 2010, a federal grand jury in the Western District of North Carolina issued an indictment, charging Defendant and others with conspiring to distribute, and possess with intent to distribute, at least five kilograms of a detectable amount of cocaine and at least fifty grams of a detectable amount of cocaine base, violation 21 U.S.C. § 841(1)(a). Doc. No. 16. Defendant pleaded guilty to that offense on August 3, 2010. Doc. No. 34. The United States Probation Office then prepared a presentence investigation report to assist the Court at sentencing. Doc. No. 52. As relevant here, the Court adopted the report in imposing its sentence. Doc. No. 78.

The report carefully detailed the nature and the circumstances of the offenses leading to Defendant's guilty plea. Pursuant to a plea agreement, Defendant agreed that the amount of cocaine that was known to or reasonably foreseeable by him was at least 15 kilograms but less than 50 kilograms, and the amount of cocaine base that was known to or reasonably foreseeable

by him was at least 500 grams but less than 1,500 grams. Doc. No. 52 at 6. The report also documented Defendant's prior criminal history. Notably, he was convicted of aggravated assault in 1994; possessing Narcotic Drugs in 2004; and possessing marijuana in 2001 and 1999. See id. at 10–11. During the aggravated assault, Defendant pointed an assault rifle at a security officer and nightclub patrons and threatened to kill them before firing a shot in the air. Id.

At sentencing, based on the nature of the offense and Defendant's criminal history, the Court found that Defendant's Total Offense Level was 33, Criminal History Category was IV, and his Guidelines imprisonment range was 240 months. Doc. No. 78 at 1. By statute, Defendant was subjected to a mandatory minimum term of 20 years' imprisonment. Doc. No. 52 at 14. Accordingly, on April 19, 2012, the Court imposed the mandatory minimum sentence of 240 months' imprisonment. Doc. No. 77. Defendant has served over half of his term of imprisonment.

On June 22, 2020, Defendant filed the instant motion, seeking compassionate release from prison based on the COVID-19 pandemic. See Doc. No. 114. In support, he maintains that his health conditions—hypertension, high cholesterol, and rectal bleeding that may be indicative of colon cancer—render him especially vulnerable to COVID-19 and otherwise render him unable to receive the care he needs. Id. at 2. Defendant also notes that COVID-19 can spread rapidly in the prison environment. Doc. No. 115 at 2. And Defendant points out that Arizona—the state where FCC Tucson, his place of imprisonment, is located—"is now among the states with the highest rates of COVID-19 spread." Id. To further support his motion, Defendant asserts he poses "no threat of violence to the community." Doc. No. 114 at 11. Moreover, while imprisoned, he has had "problem free conduct," taking over 59 courses and working several jobs to prepare him for reentry into the community. See id. at 4, 11. He has also prepared a re-entry plan and has familial support to ensure his rehabilitation. See id. at 11. Finally, Defendant maintains that the sentencing

2

factors under 18 U.S.C. § 3553(a) warrant a reduction. See id.

The Government responded, asserting that Defendant should not receive compassionate release for two reasons. First, Defendant failed to offer "extraordinary and compelling reasons" warranting a sentence reduction under 18 U.S.C. § 3582(c). Doc. No. 118 at 3–5. Reviewing Defendant's medical records, the Government disagrees that he is at an increased risk from COVID-19 based on his medical conditions. Specifically, the Government notes that Defendant's hypertension is "well controlled," he suffers from hyperlipidemia rather than high cholesterol, and his medical records do not reference rectal bleeding at all. See id. The Government did not attach those medical records to its response nor otherwise provide those records to the Court.

Second, assuming the discussed facts could present an "extraordinary and compelling reason" warranting a sentence reduction, the Government alternatively asserts that the § 3553(a) factors militate against such compassionate release. See id. at 12–13. In particular, "Defendant was in a large-scale drug distribution conspiracy that operated from at least 2006 until his indictment in 2010," which was "viewed as so serious that Congress prescribed a mandatory minimum punishment of 20 years' imprisonment." Id. at 6. Moreover, "the risk of violence surrounding drug trafficking activities is substantial [and] the health risk posed by the distribution and consumption of cocaine and cocaine base is equally egregious." Id. Because of Defendant's criminal history, and because he has served only half of his sentence, the Government maintains that release now would fail "to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes" of Defendant. Id. at 5–6.

3

## II. ANALYSIS

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." As relevant here, the applicable policy statement provides that the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court determines that" (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; see United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

Here, the Court has considered the state of the COVID-19 pandemic—both generally and within Defendant's place of imprisonment—Defendant's criminal history, his disciplinary record while imprisoned, and his age and medical conditions. Because the Government failed to supply relevant medical records, the Court will assume Defendant has provided "extraordinary and compelling reasons" warranting a sentence reduction. Nevertheless, on balance, the weight of the evidence and the § 3553(a) factors counsel against release at this time. As explained by the Government—and as expressly adopted here—the § 3553(a) factors weigh against release at this time. See Doc. No. 118 at 5–6. Thus, the Court declines to order compassionate release.[1]

---

[1] Defendant also asks the Court to modify his sentence to place him in home confinement. Even if the Court could fashion such relief, the Court declines to do so for reasons stated above.

4

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's *pro se* Motion for Compassionate Release, Doc. No. 114, is **DENIED**.

Signed: August 10, 2020

Max O. Cogburn Jr.
United States District Judge